UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT KOCSIS | : | |
| | : | |
| Plaintiff | : | No. 2:20-cv-00099-JS |
| | : | |
| vs. | : | |
| | : | |
| ANTHIUM, LLC, and | : | |
| BAYVIEW LOAN SERVICING and | : | |
| CAM LOAN SERVICING and | : | |
| WELLS FARGO BANK, N.A. as Certificate trustee | : | **JURY TRIAL DEMANDED** |
| for registered holders of VNT Trust Series 2010-2 | : | |
| SN SERVICING CORPORATION; and | : | |
| VANTIUM CAPITAL a/k/a ACQURA LOAN | : | |
| SERVICES; and BANK OF AMERICA | : | |
| HOME LOANS f/k/a WILSHIRE CREDIT | : | |
| CORPORATION | : | |
| | : | |
| Defendant(s) | : | |

## AMENDED COMPLAINT

Plaintiff, by and though counsel, now comes and file this Amended Complaint alleging as follows:

### PARTIES

1. Plaintiff is Robert Kocsis an adult individual residing at 1106 Passer Road, Coopersburg, Buck s County, Pennsylvania, 18036.

2. Defendant Anthium LLC (hereinafter "Anthium"), current servicer and named owner of the first mortgage on plaintiff's residence, is a Delaware Limited Liability Company with a registered address as 251 Little Falls Drive, Wilmington, New Castle, DE, 19808, and a business address of 2003 Western Avenue, Suite 340, Seattle, Washington 98121.

3. Defendant Bayview Loan Servicing (hereinafter "Bayview"), the former servicer of Plaintiff' first mortgage is a limited liability company with its principal place of business at 4425 Ponce de Leon Blvd., Coral Gables, FL 33146

4. Defendant CAM Loan Servicing LP (hereinafter "CAM"), the former servicer of plaintiff's first mortgage, is holding itself out as a limited partnership which has a primary stated business address of 78 Delavan St, Brooklyn, NY 11231.

5. Defendant Wells Fargo Bank, N.A. ( hereinafter "Wells Fargo") is a national banking association acting as "certificate trustee" for the VNT Trust Series 2010-2 Trust, former owner of plaintiff's first mortgage and whose place of business is 9062 Old Annapolis Road, Columbia, Maryland 21045.

6. Defendant SN Servicing Corporation (hereinafter "SN") is a mortgage servicing corporation with its main place of business at 323 5th Street, Eureka, California 95501.

7. Defendant Vantium Capital, formerly or currently also known as Acqura Loan Services, and herein referred to as "Acqura", is a mortgage servicing company with its main place of business located at 7880 Bent Branch Drive, Suite 150, Irving, Texas 75063.

8. Defendant Bank of America Home Loans, formerly known as Wilshire Credit Corporation, referred to herein as "Wilshire", is a mortgage servicing company with its main place of business located at 23631 Calabasas Road, Calabasas, California 91302.

9. At all times pertinent hereto defendant mortgage servicers, CAM, Anthium, Wells Fargo, SN, Wilshire and Bayview were acting as the agent, employee and or servant of the then current owner of the plaintiff's mortgage, or for itself as owner of such mortgage. The mortgage is the first mortgage and only mortgage on plaintiff's residence, which is the subject mortgage hereof.

## VENUE

10.  Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and all Defendants transact business here.

## JURISDICTION

11. This court has Jurisdiction pursuant to 28 U.S.C. Sec. 1331

12. At all times pertinent hereto defendant servicers were acting with actual and /or apparent authority and at the general or specific direction of their principals.

13. Defendant Anthium is at present the record owner of the mortgage in question upon the plaintiff's residence located at 1106 Passer Road, Coopersburg, Bucks County, Pennsylvania 18036.

14. Exhibit "A" is a true and correct copy of the second to last assignment of the subject mortgage, recorded on October 8th, 2019 is attached hereto as Exhibit "A" because it contains a list of assignments except the very last. The last or latest assignment is from Atlantica, LLC, not a named defendant, to Anthium, LLC.

15. The assignment history as reflected on the last page of Exhibit "A", is complicated and reflects at least eight assignments below the legal description.

16. There are at least two additional assignments not listed on page three of the last assignment, Exhibit "A"; firstly one to Atlantica LLC and then the final one from Atlantica, LLC to defendant Anthium.

17. The mortgage has been assigned at least ten times.  See Exhibit "A" last page.

18. While the mortgage was in the hands of defendant CAM Servicing, it was purportedly owned and serviced by CAM; yet no assignment mentions CAM.

19. Referring back to Exhibit "A", it is impossible to know who owned the loan when Defendants SN and CAM serviced the loan because:

> A. Referring to the assignments of mortgage on the last page of Exhibit "A", the assignment from Sequoia to Wells Fargo is dated July 11th, 2016 , but the "next" assignment out of Wells Fargo to Bayview ( date conveniently missing) is actually dated December 9th, 2013 which is a date 2 ½ years before Wells owned the loan;
>
> B. Analogizing to " Back to the Future", Wells purportedly transferred to Bayview on a date when it did not yet own the mortgage;
>
> C. Without a time machine, there is no way to ascertain who legally owned the mortgage between 12/9/13 until 7/11/16.

20. The mortgage is a variable rate loan with interest reset each year for the October 1st, payment by adding the "Index" rate; the Federal Median Cost of Funds (annualized)(per cent) as made available by the Federal Home Loan Bank, to the Margin rate of 3.25%.

21. During such time as the mortgage was serviced by CAM, CAM charged illegal and excessive interest which was not contracted for in the Note by intentionally miscalculating the correct interest rate based upon the formula in the immediately preceding paragraph.

22. Defendant SN Servicing also miscalculated the interest in the same manner by utilizing incorrect index rates, margin rates and also incorrectly amortizing the loan.

23. The re-amortization of the loan should have been performed every year beginning at the change date. For example, in year five of the loan, the recomputed interest rate should have been applied to the principal balance and amortized over the remaining ter, which would be 25

years.

24. Instead, defendants CAM and SN miscalculated the amortization in such a way as to have an overdue principal balance at the end of the loan, which was not correctly amortized to end on the final payment.

25. This kind of insidious math is not readily apparent to the consumer, nor was it apparent to any of the lawyers who have worked on this case.

26. Furthermore, the defendants, any or all, worked in concert to keep these miscalculations in the shadows by continuously assigning the mortgage in a scheme designed to conceal the true owner while  refusing to provide a discernable loan history over the period since 2012.

27. Plaintiff understands that loan histories are far from user friendly, but the printouts provided to him by the defendants are intentionally unintelligible to the average person .

28. Furthermore, the loan history provided by defendant Acqura and Bayview fail to account for decisions by servicers to arbitrarily credit large balances accumulated in the suspended funds account to the principal balance without notice to plaintiff. .

29. The failure to timely credit funds held in suspension to the principal balance results in an inflated monthly payment amount in a variable rate loan such as the one in this case.

30. For example, if $30,000 is in suspense on September 1st of a given year, the loan is re-amortized on October 1st to recompute the payment based upon the remaining amortization.

31. Because that $30,000 was not taken off the balance before the loan is re amortized, the payment for the next year beginning October 1st, is inflated and interest is charged upon an inflated principal balance for an entire year.

32. The inflated principal balance does not give plaintiff credit for funds wrongfully held

in suspense.

33. At the point in time where Defendants SN, Aqcura, Wilshire and CAM miscalculated it could be argued that the ownership of the loan was intentionally in limbo.

34. Plaintiff believes, and avers, that such limbo status was not an accident, but was an intentional conspiracy to extort inflated payments from plaintiff in violation of Pennsylvania's usury and consumer laws.

35. In addition, CAM and SN added and purportedly incurred, over $5,000 in forced place insurance costs which were fraudulent because CAM and SN knew full well that plaintiff had his own insurance coverage at the time, with the servicer listed as loss payee or additional insured.

36. Exhibit "B", attached hereto is a true and correct copy of the subject mortgage upon plaintiff's residence.

37. Exhibit "C" contains a true and correct copy of the Note relating to the mortgage along with the publicly available allonges thereto.

38. The Note provides for an adjustable interest rate calculated by adding a margin of Three and one quarter per cent (3.25%) to the index rate which is "the monthly median cost of funds ratio (annualized)(percent) as made available by the Federal Home Loan Bank Board.

39. Defendant CAM Servicing consistently overcharged plaintiff by calculating the new payment using an incorrect and excessive index interest rate.

40. The incorrect calculations inflated the alleged balance of the loan being collected today by Anthium, by a factor of as much as 100%.

41. Defendants CAM, SN, Acqura, Wilshire, Anthium and Bayview were specifically put on notice of such overcharges by plaintiff along with detailed correspondence, a qualified written

request requesting justification and accounting for their mistakes.

42. To this date, no defendant has accounted for or explained the alleged overcharges to the account.

43. To this date, no defendant has explained the arbitrary holding of large sums in suspense when they should have been credited to the principal balance, resulting in a lower payment.

44. The overcharged interest was brought as a counterclaim in a foreclosure action in Bucks County Common Pleas Court.

45. That counterclaim was stricken, it was not adjudicated, because of Pennsylvania's Rule of Civil Procedure 1148 which prohibits counterclaims in mortgage foreclosure actions unless such claims plead fraud in the inception. See Pa.R.C.P. 1148.

46. Furthermore, the mortgage foreclosure judgment is "in rem" only and therefore this claim of overstatement of amount due under the note is a contract claim which has not been decided by the state tribunal.

47. As the result of state imposed restrictions upon the gist of the counterclaim, plaintiff has been precluded from asserting the within causes of action against defendants until now.

48. The defendants, any or all, have been on continuing notice of the illegality of collecting the excessive interest and forced place insurance charges and yet have never even suggested a defense to the undeniably arithmetical problem.

49. Furthermore, the Pennsylvania holder in due course doctrine offers no safe harbor for the actions of defendants in that 13 Pa. C.S. Sec. 3305 (a)(3) allows for the assertion of a defense of the obligor against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

50. The Pa. R.C.P. 1148 thwarts that defense as to these claims.

51. The foreclosure action in rem is not an action in contract to enforce the note, it is a legal fiction created in Pennsylvania to enforce an interest in realty. A mortgage is only against the property by virtue of the transfer of that interest or right in the mortgaged realty.

52. The premise of this lawsuit is that the blatant miscalculation and collection of the excessive fees and interest by defendants is a breach of the note contract and the breach thereby creates a violation of Federal and State consumer statutes.

53. Furthermore, it is abundantly clear by comparing the allonges on the note to the assignment history and then to the servicer history, that some or all of the defendants never had a "right" to collect upon the note and/or mortgage, at all, leading to further illegal collection activity under the F.D.C.P.A., RICO and related statutes.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. Sec. 1592 et seq

54. Paragraphs one through 53 are hereby incorporated by reference.

55. Defendant servicers were at all times collecting a loan which was in default upon their receipt of the servicing and hence were and are acting as debt collectors pursuant to the F.D.C.P.A. 15 U.S.C. 1592a(6)(F)(iii).

56. Mortgage Servicers are debt collectors pursuant to the definition in 15 U.S.C. 1692a (6) but excluded from such definition if the account was transferred to them while **not** in default pursuant to 15 U.S.C. Sec. 1592a (6)(F) (iii).

57. This action arises out of illegal acts and omissions of above-named all defendants who used false, deceptive, misleading, unfair, abusive, and oppressive practices and means in

conjunction with attempts to collect an alleged debt or debts and thereby violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1-2270.6 ("FCEUA"), and Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 ("UTPCPL").  Plaintiff seeks actual damages, statutory damages, treble damages, costs, and attorney's fees.

58.  Debt Collector Defendants, Anthium, CAM, SN, Wells, Wilshire, Bayview and Acqura (hereinafter "Collectors") at all times relevant hereto, used an instrumentality of interstate commerce or the mails in a business, the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due asserted to be owed or due another.   Based on said activity or activities, Defendants are debt collectors within the meaning of FDCPA, 15 U.S.C. § 1692a (6), and FCEUA, 73 P.S. § 2270.3.

59.  Collector Bayview had filed a complaint in foreclosure against plaintiff in the Bucks County Court of Common Pleas and obtained a judgment IN REM against plaintiff's residence only.

60. Defendant Bayview is attempting to defraud the court and the plaintiff  by falsifying and alleging that  an assignment dated December 9th, 2013,   which was recorder almost three years later on August 24th, 2016 would take Bayview out of  F.D.C.P.A.  exposure by creating a three year gap in the ownership of the loan and possibly making it appear that Bayview took over servicing when the loan was not in default.

61. Plaintiff believes and avers that Bayview took over servicing of the loan while it was in default and is a collector pursuant to the F.D.C.P.A.

62. Plaintiff also alleges that the date on the purported assignment to Bayview is false and by no coincidence is the only date of execution not referenced on the list on the list of assignments

in Exhibit "A".

63. The Fair Debt Collection Practices Act at 15 U.S.C. Section 1692f(1) prohibits collecting more than is legally owed on a debt.

64. The finding of a mortgage foreclosure judgment amount, in a case stated to be "in rem", is not the amount due under the contract of the note, it is the amount of the lien upon the subject realty.

65. Section 1692(f)(1) specifically states that it is a violation of FDCPA to collect any amount, including any interest fee, charges or expense incidental to the principal obligation, unless such amount as expressly authorized by the agreement creating the debt or permitted by law.

66. Because of the way Pa.R.C.P. 1148 works to eliminate contract counterclaims in the "in rem" lawsuit, the finding of a correct contract due amount is not a necessary element of the mortgage foreclosure action.

67. Instead, the foreclosure action is purposed, by Pennsylvania Law and the Rules, to expose the real property interest conveyed by the mortgage, to sale.

68. The collectors, or any or all of them, but particularly Bayview, have violated the FDCPA by attempting to expose the property for sale and to a lien for an amount more than is legally due under the contract.

69. In addition, the plaintiff has suffered injury to his reputation and creditworthiness due to the piling on of **over $40,000** in illegal interest charges and the attempt to collect same.

70. The FDCPA at U.S.C. 15 Sec. 1592k provides that attorneys fees and expenses may be recovered where the acts are violated.

71. Upon information and belief, the alleged mortgage assignments recorded by

defendants in the foreclosure action are ineffective or illegal pursuant to the Real Estate Mortgage Investment Conduit Regulations (REMIC) of the Internal Revenue Code or the officers executing same were otherwise legally unable to acknowledge the alleged assignments.

72. Upon information and belief, the note underlying the mortgage is not in the possession of the defendants.

73. Upon information and belief, the note underlying the mortgage does not belong to Defendants or any of them as alleged.

74. A mortgage holder without the underlying obligation or note, had no standing to bring a foreclosure action.

75. The collectors, particularly Bayview's, misrepresentations made to plaintiff in the course of the collection process constitute a violation of the following sections of the Fair Debt Collection Practices Act 15 U.S.C.:

(A) Section 1692e(2)(A) by falsely representing the character, amount and legal status of the debt; and

(B) Section 1592e(8) by reporting false information to a credit bureau; and

( C) Section 1692e(9) (13) by using simulated process or official documents; and

(D) Section 1692e(8) by failing to report the account as in dispute during the RESPA period of repose.

(E)  Defendants, by continuing to charge late fees and interest and by holding plaintiff's payments in a suspense account, failed to cease collection on a disputed debt in violation of 15 U.S.C. Sec 1692g(b).

76. The alleged continuing violations of the Fair Debt Collection Practices Act occurred within one year of the original filing of this complaint.

77. For the defendants which serviced the loan prior to one year from the filing of this action; their malfeasance under the act has continued to the date of filing because they were on clear arithmetical notice of the illegal and excessive interest and have continuously refused to rectify their illegal calculations as to the newer servicer despite demand of plaintiff.

78. The defendants which were subsequent servicers have refused continuously to this date to provide corrected arithmetic re the note to the subsequent servicers despite Qualified Written Requests made pursuant to the Real estate Settlement Practices Act and documentation regarding information requested and related disputes provided to them by the plaintiff.

79. Alternatively, the collectors, any or all, forwarded knowingly incorrect and / or inaccurate loan records and information to the subsequent servicers and continue to know that such information was false or misleading.

80. The previous servicers knowingly ignored of the problem by intentionally transferring the mortgage with incorrect calculations and undeterminable ownership in a clear effort to insulate them from liability under the F.D.C.P.A. and related state laws and for the express purpose of inflating the sale value of the loan to plaintiff's detriment.

81. The violations, even if performed by the defendants' agent and employee servicer, occurred at the specific direction and instruction of defendants or any of them.

82. As a result of Defendants' unlawful debt collection practices, Plaintiff has suffered and continues to suffer financial harm including but not limited to :

a. Inflated, illegal interest expense upon the contractual amount claimed due;

b. Illegal and inflated late fees on the contractual amount claimed due;

c. Interest on needlessly placed inflated place insurance;

d. Damage to plaintiff's credit report and credit score;

e. Attorney's fees and costs associated with attempting to prosecute plaintiff's rights.

83. Also as a result of defendants' any or all of their collection activity plaintiff has suffered from emotional stress, duress, public embarrassment and exacerbation of his existing medical conditions resulting in sleeplessness, exhaustion and anxiety.

WHEREFORE, Plaintiff respectfully requests that this honorable court enter judgment for Plaintiff and against Defendants, any or all, for the following:

A. A declaratory judgment that defendants' or any of their conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. Sec 1692, *et seq* and as a result violated the Fair Credit Extension and Uniformity Act

B. Award actual damages of at least $40,000 or such other overcharged amount proven at trial; and

C. Award statutory damages of $1,000 pursuant to  pursuant to 15 U.S.C. sec 1692k(a) as to every violation in counts I and II; and

D. Award Treble Damages pursuant to the 73 P.S. Sec. 201-9.2(a); and

E. Grant other such relief as the court may deem just and proper; and

F. Award Interest, costs and reasonable attorneys fees pursuant to the Act; and

G. Award an appropriate amount for infliction of emotional duress.

## II

### COUNT TWO PURSUANT TO THE PENNSYLVANIA FAIR CREDIT AND UNIFORMITY ACT 73 P.S. Sec. 2270.1 et seq AS PROVIDED FOR IN THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 P.S. Sec. 201-1 et seq.

83.   All other Paragraphs in this complaint are hereby incorporated by reference.

84. The mortgage debt involved in this case is a debt upon plaintiff's residence as the result of a refinance of said residence and is therefore a consumer debt which is not a purchase money mortgage as defined under the FCEUA and the judicial interpretations thereof.

85. Defendants are debt collectors pursuant to the Pennsylvania Fair Credit and Uniformity Act (hereinafter "FCEUA") 73 P.S. Section 2270.3.

86. The FCEUA at Section 2270.4(a) provides:

It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act (Public Law 95-109 , 15 U.S.C. Sec. 1692 et seq.)

87. Any violation of the FDCPA by debt collectors is therefore also a violation of the FCEUA pursuant to that section 2270.4(a).

88. Defendants are "creditors" as defined in the FCEUA Section 2270.3.

89. The creditor defendants have committed an unfair or deceptive act or practice as defined in FCEUA Section 2270.4 (b)(5)(ii) by falsely representing the character, amount or legal status of the plaintiff's debt as described above.

90. Plaintiff has suffered an ascertainable financial loss as the result of the above stated violation of the FCEUA as compensable through the Pennsylvania UTPCPL in an amount in excess of $40,000 in illegally computed interest and added unnecessary forced placed insurance premiums.

91. The creditor defendants have committed an unfair or deceptive act or practice as defined in FCEUA Section 2270.4 (b)(6)(I) by collecting any amount, including interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly

authorized by the agreement creating the debt or permitted by law as described above.

92. These enumerated violations of the FCEUA are by definition of the law itself Unfair and Deceptive Trade Practices pursuant to the Pennsylvania UTPCPL 73 P.S. Section 201-1 et seq.

93. Specifically FCEUA 2270.5 states that a violation of the FCEUA is a violation of the UTPCPL and therefore this claim is made under the UTP-CPL for violations of FCEUA

WHEREFORE, Plaintiff respectfully requests that this honorable court enter judgment for Plaintiff and against Defendants, any or all, for the following:

A. Enter a declaratory judgment that defendants' or any of their conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. Sec 1692, *et seq* and as a result violated the Fair Credit Extension and Uniformity Act; and

B. Award actual damages of at least $40,000 or any such other overcharged amount proven at trial; and

C. Award statutory damages of $1,000 pursuant to pursuant to 15 U.S.C. sec 1692k(a) as to every violation in counts I and II; and

D. Award Treble Damages pursuant to 73 P.S. Sec. 201-9.2(a); and

E. Grant other such relief as the court may deem just and proper; and

F. Award costs and reasonable attorneys fees pursuant to 73 P.S. Sec. 201-9.2(a) of the Act; and

G. Award an appropriate amount for infliction of emotional duress pursuant to the F.D.C.P.A. standard.

**III**

**COUNT THREE - PURSUANT TO THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 Pa. C.S. 201-1 et seq ALSO KNOWN AS THE PENNSYLVANIA UNFAIR AND DECEPTIVE PRACTICES ACT (UDAP)**

94. Plaintiff incorporates herein each and every allegation in the preceding paragraphs as if same was hereby set forth.

95. At all times relevant hereto the defendants were engaged in "Trade or Commerce" as defined in 73 Pa. C.S. 201-(3) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

96. The representations made by Defendants, any or all, or their representatives, whether explicit or implied, written or verbal, led the plaintiff to reasonably believe that the amounts represented by defendants as being due and owing were correct.

97. As part of this disadvantageous loan transaction, Defendants or their representatives fraudulently and misleadingly failed to inform the Plaintiff that the amount owed was inflated and they had no intention of merely examining plaintiff's arithmetic which showed that the amounts charged as payments were inflated and incorrect.

98. Instead, defendants have fraudulently ballooned the judgment amount in an insidious, deceptive and illegal scheme to defraud the plaintiff herein.

99. The very filing of the foreclosure action, without the legal right to do so, and the further prosecution of such including an inflated judgment , is deceptive and unfair.

100. All of the above described deceptive and misleading behavior was repeated on numerous occasions to the detriment of many citizens of Bucks County, the Commonwealth of Pennsylvania and numerous other states. Defendant has established a pattern and practice of repeatedly engaging in the boldly deceptive and unfair behavior described herein.

101. The defendants, or any of them have therefore established a pattern of easily discernable outrageous behavior against plaintiff which justify and authorize this court to impose treble and punitive damages in this and any other like case.

102. Any or all of the above described activities, whether determined to be a violation of the related cited federal laws or not, constitute unfair and deceptive practices within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1 et. Seq (UDAP).

103. The actual ownership and the balance due on the note were not decided in the state court foreclosure action and hence are not binding upon this court.

104. Furthermore, the foreclosure action is an in rem action only under Pennsylvania state law and hence the issues raised in this lawsuit were **not** decided in such foreclosure action as a matter of law.

105. This court has no binding state court decisions regarding any issues herein raised.

**WHEREFORE**, for all the reasons set forth above Plaintiff requests that this Court award them actual, statutory and treble damages pursuant to UDAP; award Plaintiff Treble damages and award reasonable attorney's fees and costs pursuant to UDAP; and grant any other relief the Court deems just and proper.

## IV

## COUNT FOUR - CIVIL FRAUD

106.  Plaintiff incorporate herein each and every allegation in the preceding paragraphs as if same was herein set forth.

107. Defendants, or any or all of them, by and through their authorized agents, did knowingly defraud plaintiff.

108. The use of the word "defendant" hereinafter is meant to include any or all defendants as mortgage owner, trustee, agents, servants, employees, attorneys and its Servicing Agents.

109. Defendants, or any of them, made a series of misrepresentations to Plaintiff regarding the true ownership of the loan, the true servicer of the loan and the current index interest rate and the current margin rate.

110. The misrepresentations were made verbally and in writing through defendants' authorized agents, attorneys, servicers and employees, over the telephone and in writings sent to the Plaintiff.

111. The defendant s, through their agents knew or should have known that the mathematical calculations, misapplication of payments and placing of force place insurance were false when made.

112. Alternatively the defendants or their agents should have known that the statements of calculation  were false when made.

113. The defendants, directly or through their agents intended that or knew or should have known that plaintiff would justifiably rely on the false or misleading statements to his detriment.

114. Defendants, directly or through their agents intended that the Plaintiff rely on the false statements to his detriment, and make the inflated incorrect payments.

115. Plaintiff did reasonably rely on the said false statements to his detriment.

116. Plaintiff has suffered damage  as the result of his reasonable reliance on the false

representations of defendants through its agents as follows:

    (A) damage to his credit history; and

    (B) damage to their reputation in the community;  and

    ( C) monetary damages for the increased cost interest on inflated principal balances; and

    (D) monetary damages and inconvenience resulting from the lack of credit;

    (E) unnecessary stress, strain and uncertainty;  and

    (F) costs, fees, and attorney's fees directly resulting from the civil fraud  perpetrated.

WHEREFORE, Plaintiff request this court to enter a judgment in their favor and against defendants, any or all, for an amount in excess of Fifty-Thousand Dollars ($50,000).

## V

## COUNT FIVE

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND VIOLATION OF RESPA 12 U.S.C. S.S. 2601-2617

117. Plaintiff incorporates herein each and every allegation in the preceding paragraphs as if same was herein set forth.

118 . Defendants are obligated by contract and common law to act in good faith and to deal fairly with each borrower.

119. The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

120. The defendants, by and though its agents, servants and employees routinely and regularly breaches this duty by:

    a. failing to legally perform loan servicing functions consistent with its responsibilities to borrowers; and

b. failing to properly supervise its agents and employees including, without limitation, its loss mitigation and collection personnel and its attorneys; and

c. routinely refusing to respond to qualified written requests required by the Real Estate Settlement Procedures Act (RESPA)12 U.S.C. Subsections 2601-2617; and

d. failing to provide requested specific followup information required by RESPA; and

e. failing to follow through on verbal, written and implied promises; and

f. failing to follow through on contractual obligations.

121. As a result of these failures to act in good faith and in the absence of fair dealing, defendants, or any or all of them have caused Plaintiff harm.

WHEREFORE, Plaintiff request a judgment against the plaintiff or against the amount due under the mortgage and note in the form of a counterclaim, setoff or recoupment for an amount in excess of Fifty-Thousand Dollars($50,000.00).

Respectfully Submitted:

\_\_Joseph F. Claffy, Esq._____
Joseph F. Claffy, Esquire
ID No. 35142
26 South Church St.
West Chester, PA 19382
610 429-0900